CHARLES S. BARDWELL and others *vs.* HENRY H. COLLINS, impleaded, etc.

July 17, 1890.

**Due Process of Law — Personal Action — Service by Publication on Persons within State.**—In actions *in personam* of a strictly judicial character, and proceeding according to the course of the common law, service of the summons, by publication in a newspaper, upon resident defendants, who are personally within the state and can be found therein, is not "due process of law."

**Same—Action to Foreclose Mortgage or Mechanic's Lien.**—Therefore Gen. St. 1878, c. 81, § 28, assuming to provide for such service in actions to foreclose mortgages, is unconstitutional and void.

Appeal by defendant Henry H. Collins, impleaded with Emilie Anderson and others, from an order of the district court for Hennepin county, *Young* and *Smith,* JJ., presiding, refusing to set aside, as to him, a judgment by default in an action to enforce a mechanic's lien.

*Daniel Fish,* for appellant.

*Harlan P. Roberts,* for respondents.

MITCHELL, J.    The questions raised by this appeal involve the construction and validity of the provisions of Gen. St. 1878, c. 81, tit. 2, § 28, relating to the service of the summons in actions for the foreclosure of real-estate mortgages, which, by section 8, chapter 90, of the same statutes, are made also applicable to actions to enforce mechanics' liens.    This action was one to enforce a mechanic's lien; the complaint alleging that the defendant Collins claimed a lien or interest in the property on which the lien was sought to be enforced, but that it was subsequent and inferior to plaintiffs' lien, and that no personal claim was made against him.    It nowhere appears whether Collins was or was not a resident of the state.    It must therefore be presumed that he was a resident, and could have been found within the jurisdiction of the court.    The only service of the summons upon him was by publication, and no affidavit for publication was ever filed with the clerk of the court, as provided by Gen. St. 1878, c. 66, § 64.    Judgment was entered against him on default, which he moved to have set aside on the ground that the court had never acquired jurisdiction of his person, because there had been no valid service of the summons.    From an order denying this motion, he appeals.

The legislation in this state regarding substituted service by publication of the summons in civil actions has been somewhat incongruous and complicated, the history of which in detail might be interesting, but not profitable for present purposes.    Suffice it to say that, from the earliest days of the territory down at least to 1866, such substituted service in actions strictly judicial in their nature, and proceeding according to the course of the common law, was only allowed where the defendant could not be found within the state; personal service being, in accordance with the uniform rule and practice from time immemorial, required in all cases where the defendant could be found, and service made upon him, within the jurisdiction of the court.    And prior to 1869 an order of court granted upon an affidavit showing a state of facts authorizing service by publication was necessary; but by Laws 1869, c. 73, (Gen. St. 1878, c. 66, § 64,)

publication was permitted merely upon filing the affidavit with the clerk of the court, an order of the court being no longer required. The filing of the affidavit is, however, a condition precedent to a valid service by publication upon a non-resident defendant. *Barber* v. *Morris*, 37 Minn. 194, (33 N. W. Rep. 559.) The first appearance of anything like section 28, tit. 2, *c.* 81, Gen. St. 1878, was in the Revision of 1866, where it will be found as section 25 of the same title and chapter. This was amended by Laws 1868, *c.* 74, so as to read as it is now, except that the word "personal," qualifying the word "judgment," was omitted. This rendered it meaningless and inoperative unless, by a very liberal and hardly allowable construction, the word "personal" could be read into it. It remained in this form until March 7, 1878, when, by chapter 6 of the Laws of that year, the word "personal" was restored, so that it read as now found in Gen. St. 1878. In the mean time, title 1 of chapter 81, to which it refers, had been repealed by Laws 1877, *c.* 121, and foreclosure by advertisement entirely abolished. This mode of foreclosure was, however, restored by an act (Laws 1878, *c.* 53,) also passed March 7, but to take effect April 1, 1878, and which is now title 1, *c.* 81, Gen. St. 1878. It is also worthy of note that on February 28, 1878, (only eight days before the last amendment of Gen. St. 1866, *c.* 81, tit. 2, § 25,) the legislature added a sixth subdivision to Gen. St. 1866, *c.* 66, § 49, (enumerating the cases where a summons might be served by publication on non-resident defendants,) which is as follows: "When the action is to foreclose a mortgage, or to enforce a lien of any kind, on real estate in the county where the action is brought." Laws 1878, *c.* 9. So much for the history of the legislation bearing upon the questions before us.

The provisions of Gen. St. 1878, *c.* 81, tit. 2, with which we have now to do are as follows:

"Sec. 27. Actions for the foreclosure of mortgages shall be governed by the same rules and provisions of statute as civil actions, except as herein otherwise expressly prescribed.

"Sec. 28. Service by publication of the summons, in the manner provided in section five of title one of this chapter for publication of the notice of sale therein specified, may be made upon *all parties*

to the action *against whom no personal judgment is sought;* and in such case judgment may be taken, without giving security as to those parties, at the expiration of twenty days after the completion of the period of publication; but such parties, or any of them, shall be permitted to appear and defend, upon good cause shown, at any time before final decree."

The questions presented are two: *First.* Was section 28 intended to provide that, in actions to foreclose mortgages, the summons might be served by publication on resident defendants who could be found in the state? And, as a subsidiary question, whether the provisions of Gen. St. 1878, *c.* 66, § 64, providing for the filing of an affidavit with the clerk of the court, are applicable to such cases. *Second,* if the statute thus provides for service by publication on resident defendants, does such service constitute "due process of law?" We infer from the memorandum of the district judge that the subsidiary branch of the first question was the main if not the only point urged before him; and the second question is so faintly raised by the defendant in this court that we would hardly deem it ·incumbent on us to consider it, if the interests of no one but himself would be affected by an erroneous assumption of the validity of such a statute.

We think it clear that the expression "personal judgment" is here used in the sense of a money judgment for the mortgage debt; and, while the legislation on the subject, as we have narrated it, has been rather incongruous in some respects, and while we have been unable to discover where the commissioners who prepared the Revision of 1866 found any precedent for so radical a departure from the uniform course of judicial procedure from time immemorial, and while we are unable to conceive what considerations induced them to adopt it, yet its plain and unequivocal language compels us to the conclusion that this statute was intended to provide that service of the summons by publication might be made on all defendants in foreclosure suits whom it was not sought to hold personally liable for the mortgage debt, although residents of the state, and personal service might be made on them within its jurisdiction. And, if this be so, it would seem to follow that the provisions of section 64, *c.* 66, as to filing an affidavit, could not apply to such cases; for, by

the very terms of that section, it is only applicable to cases where the defendant is a non-resident, and cannot be found within the state. Where such are not the facts, the required affidavit cannot be truthfully made.

The only remaining question, therefore, is whether it is competent for the legislature to authorize such service in such actions upon residents of the state personally present, and capable of being found and personally served, within its jurisdiction. Is such service "due process of law?" In determining this question, it becomes important, first, to consider the character of an action to foreclose a mortgage. It is not an action *in rem,* but an action *in personam.* It is true it has for its object certain specific real property against which it is sought to enforce the lien of the mortgage, and in that sense it partakes somewhat of the nature of a proceeding *in rem,* but not differently, or in any other sense, than do actions in ejectment, replevin, for specific performance of a contract to convey, to determine adverse claim to real estate, and the like. The rights and equities of all parties interested in the mortgaged premises are to be adjusted in the action, which proceeds, not against the *property,* but against the *persons;* and the judgment binds only those who are parties to the suit, and those in privity with them. *Whalley* v. *Eldridge,* 24 Minn. 358. Next, it is not only an action *in personam,* but is also strictly judicial in its character, proceeding according to the due course of common law, like any other ordinary action cognizable in courts of equity or common law. These facts are important for the reason that what would be due process of law in one kind of proceeding might not be such in another, for reasons that will be alluded to hereafter.

No court has ever attempted to give a complete or exhaustive definition of the term "due process of law," for it is incapable of any such definition. All that can be done is to lay down certain general principles, and apply these to the facts of each case as they arise. Mr. Webster, in his argument in the Dartmouth College Case, gave an exposition of the words "law of the land," and "due process of law," which has often been quoted by the courts with approval, viz.: "The general law, which hears before it condemns; which proceeds

upon inquiry, and renders judgment only after trial." In judicial proceedings, "due process of law" requires *notice*, hearing, and judgment. It does not mean, of course, the general body of the law, common and statute, as it was at the time the constitution took effect; for that would deny to the legislature the power to change or amend the law in any particular. Neither, on the other hand, does "the law of the land," or "due process of law," mean anything which the legislature may see fit to declare to be such; for there are certain fundamental rights, which our system of jurisprudence has always recognized, which not even the legislature can disregard in proceedings by which a person is deprived of life, liberty, or property; and one of these is notice before judgment in all judicial proceedings. Although the legislature may at its pleasure provide new remedies or change old ones, the power is nevertheless subject to the condition that it cannot remove certain ancient landmarks, or take away certain fundamental rights, which have been always recognized and observed in judicial procedures. Hence, it becomes important, in determining what kind of notice would constitute "due process of law" in any judicial proceeding affecting a man's property, to ascertain what notice has always been required and deemed essentially necessary in actions or proceedings of that kind, according to that system of jurisprudence of which ours is derivative. In proceedings *in rem*, as in admiralty and the like, where the process of the court goes against the *thing*, which is in the custody of the court and is technically the defendant, and persons are not made parties to the suits but come in rather as intervenors, it is not essential to the jurisdiction that the persons having an interest in the thing to be affected by the judgment should have personal notice of the proceeding, or in fact any other notice than such as is implied in the seizure of the thing itself. There are other proceedings in the nature of proceedings *in rem*, many of them not strictly judicial, and none of them proceedings according to the course of common law, such as the probate of wills, administration on the estates of deceased persons, the exercise of the right of eminent domain, the exercise of the power of taxation, which affect property rights, but in which personal notice to persons interested in the subject or object of the proceedings has never been deemed nec-

essary. Some form of substituted service of notice, as by publication, has always, from considerations of public policy or necessity, been deemed appropriate to such proceedings, and hence, as to them, "due process of law." But we think that, from the earliest period of English jurisprudence down to the present, as well as in the jurisprudence of the United States derived from that of England, it has always been considered a cardinal and fundamental principle that, in actions *in personam* proceeding according to the course of common law, personal service (or its equivalent, as by leaving a copy at his usual place of abode) of the writ, process, or summons must be made on all defendants resident and to be found within the jurisdiction of the court. We do not mean that the term "proceeding according to the course of the common law," as used in the books, is to be understood as meaning, necessarily and always, personal or actual service of process; for, although service by publication is of modern origin, there has always been some mode by which jurisdiction has been obtained at common law by something amounting to or equivalent to constructive service, where the defendant could not be found and served personally. But what we do mean to assert is that the right to resort to such constructive or substituted service in personal actions proceeding according to the course of the common law rests upon the necessities of the case, and has always been limited and restricted to cases where personal service could not be made because the defendant was a non-resident, or had absconded, or had concealed himself for the purpose of avoiding service. As showing what means were resorted to as amounting or equivalent to constructive service, and how strictly it was limited to cases of necessity by both courts of common law and courts of chancery, reference need only be had to 3 Bl. Comm. 283, 444.

As a substitute for the means formerly resorted to in England in such cases, most of the American states have adopted service of the process or summons by publication. But we have found no statute, except the one now under consideration, which has assumed to authorize such a mode of service, and have found no case where its validity has been sustained by the courts, except as to defendants who could not be found within the jurisdiction, either because of non-

residence, or because they had absconded or concealed themselves to avoid the service of process. We think this will be found true in every instance, from the earliest decisions on the subject down to the latest utterance of the supreme court of the United States in *Arndt* v. *Griggs*, 134 U. S. 316, (10 Sup. Ct. Rep. 557,) in which that court took occasion to set at rest some misapprehensions as to the scope of their previous decision in *Hart* v. *Sansom*, 110 U. S. 151, (3 Sup. Ct. Rep. 586.) We think it would be a surprise to the bench and the bar of the country if it should be held that process or summons in ordinary civil actions might be served on resident defendants, present and capable of being found within the jurisdiction of the court, merely by publication in a newspaper. The dangers and abuses that would arise from such a practice are too apparent to require to be named or even suggested. So radical a departure is this from the uniform and well established ideas of what constitutes due process of law in such cases that, although this act has been on the statute-books for 24 years, we doubt whether one lawyer in 20 is aware of its existence; and we have yet to hear of any case, except the present, where any one has ventured to act upon it.

It is, in our judgment, beyond the power of the legislature to disregard so fundamental and long-established a principle of our jurisprudence. Service by publication, under such circumstances, is not "due process of law," and therefore any statute assuming to authorize it is unconstitutional. It would be of little use to cite authorities upon a subject which has been so much and so often discussed in its many phases, as each case must be determined upon its own facts, and hence the decided cases would ordinarily be in point only by way of analogy. See, however, *Brown* v. *Board of Levee Com'rs*, 50 Miss. 468.

Order reversed.