(107 N. W. 59.)

---

Lizzie Fenton and David Allen Murray, by A. G. Whittemore, His General Guardian and by W. A. Scott, His Guardian ad Litem, and Henry O. Wheeler v. The Minnesota Title Insurance & Trust Company, Trustees for the Fidelity Investment Union and The Northern Trust Company et al.

Opinion filed May 14, 1906.

**Constitutional Law — Due Process of Law — Publication of Summons.**

1.  The publication of summons, as prescribed by chapter 5, page 9, Laws 1901, in actions to quiet title, there being no description of the land in such publication, is not a sufficient notice to adverse claimants, not specifically named in the summons, to constitute "due process of law."

**Judgment — Validity — Collateral Attack.**

2.  A judgment so obtained, whether attacked directly or collaterally, is void as to an adverse claimant not named in the summons, and who did not appear in the action.

**Taxation — Removing Cloud — Tender.**

3.  One who sues in equity to remove a cloud on his title caused by a void tax sale will be required to pay the amount justly due for the taxes included in the void sale.

Appeal from District Court, Ransom county; *Allen,* J.

Action by Lizzie Fenton and others against the Minnesota Title Insurance & Trust Company and others.  Judgment for defendants, and plaintiffs appeal.

Reversed and remanded.

*J. E. Robinson,* for appellants.

The statute, chapter 5, Laws of 1901, for the determination of adverse claims to real property does not secure to an unknown owner of real estate due process of law, and is unconstitutional, the notice not being reasonable and adequate for the purpose. Roller v. Holley, 176 U. S. 398; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565.

*Pierce & Tenneson,* for respondent.

In actions *in rem* courts may prescribe the form of bringing in parties by publication. Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. Rep. 557; Wahrman v. Conklin, 155 U. S. 314; Roller v. Holley, 176 U. S. 398; Shepherd v. Ware, 46 Minn. 174, 24 Am. St. Rep. 212; State v. Westfall, 89 N. W., 175.

Constitutionality of statutes like chapter 5, Laws of 1901, is held in Scudder v. Sargent, 17 N. W. 369; Coyd v. Trotter, 9 N. E. 507; Adams v. Cowes, 95 Mo. 501; Wunkel v. Landry, 39 La. Ann. 312; Essig v. Lower, 21 N. E. 1090; Gillespie v. Thomas, 23 Kan. 138; Cooley Cons. Lim., page 505; Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123.

Where there is service of process, although irregular, but adjudged by the court rendering judgment thereon regular, the judgment is not void; although vulnerable to a direct movement to avoid it, it will withstand collateral attack. Quarl v. Abbot, 1 N. E. 476; Field v. Malone, 1 N. E. 507; Pickering v. State, 6 N. E. 611; Essig v. Lower, supra; Goodell v. Starr, 26 N. E. 793; Newcomb v. Newcomb, 76 Ky. 544, 26 Am. Rep. 222; Ballinger v. Tarbell, 16 Iowa, 491; Hendrick v. Whittemore, 105 Mass. 23; Sheldon v. Wright, 5 N. Y. 497; People v. Hagar, 52 Cal. 171; 17 Am. & Eng. Enc. Law, 1068.

Finding by a court, in its judgment, that notice was given, is conclusive against collateral attack. Swift v. Yanaway, 38 N. E. 589; Van Matre v. Sankey, 36 N. E. 628; Cincinnati R. R. Co. v. Village, 27 N. E. 464; McCahill v. Equitable Life Assur. Soc., 26 N. J. Eq. 531; Hurlbert v. Thomas, 55 Conn. 181, 3 Am. St. Rep. 43.

ENGERUD, J. On February 3, 1902, the respondent, Minnesota Title Insurance & Trust Company, as trustee for Fidelity Investment Company, procured the entry by the district court of Ran-

som county of a judgment purporting to quiet its alleged title to the quarter section of land now in controversy. The action in which that judgment was entered was one to determine adverse claims under section 5904 et seq., Rev. Codes 1899, as amended by chapter 5, p. 9, Laws 1901, commenced by said respondent against 92 known defendants and "all other persons unknown, claiming any estate or interest in, or lien or incumbrance upon the property described in the complaint, and their unknown heirs." The plaintiff in that action claimed to have acquired title to the land in controversy by virtue of two tax deeds executed and delivered to it by the county auditor of Ransom county on April 12, 1901. The respondents Northern Trust Company, Douglas A. Fiske and Emma C. Simmons now claim to have an indefeasible title to said land as tenants in common by virtue of conveyances from said Minnesota Title Insurance & Trust Company, as trustee aforesaid, executed after the entry of said judgment. They assert that the judgment above mentioned is a conclusive adjudication against all the world that the tax deeds to their grantor were valid, and that the judgment bars the assertion of any right of redemption even on the part of the appellant David Allen Murray, who is an infant. The appellants Lizzie Fenton and David Allen Murray are, respectively, the widow and only son of Warham N. Murray, deceased, who died long before the commencement of the former action, and they are the owners of the land unless their rights are barred by the judgment above mentioned. David Allen Murray was at the time of the commencement of this action about 17 years of age, and appears by guardian. He and his mother have never been residents of this state, but reside in New Hampshire, of which state Warham N. Murray, deceased, was also a resident during his lifetime. The appellant Henry O. Wheeler has no estate or interest in the property, and was improperly joined as plaintiff. The action should be dismissed as to him.

This action was commenced in November, 1903. The issues are presented by the allegations composing what the pleader styles the "second cause of action" in the complaint, as amended, and the pleading interposed by the Northern Trust Company, Douglas A. Fiske and Emma C. Simmons, who were joined as additional defendants after the action had been commenced against the first-named defendant. The complaint alleges plaintiffs' ownership

of the premises, and alleges that the Minnesota Title Insurance & Trust Company, as trustee aforesaid, claimed to have acquired title thereto by virtue of two pretended tax deeds; that said company had procured the rendition and entry of the judgment above mentioned, and by reason thereof denied plaintiffs' title. The complaint alleges in detail facts showing that the tax deeds, as well as the taxes upon which they were based, were invalid, and also avers that the judgment purporting to quiet title was void, because, among other reasons, the proceedings culminating in the judgment in that action did not constitute "due process of law," and hence the court was without jurisdiction to render the decree complained of. The facts upon which the plaintiffs relied to sustain their attack upon the judgment were specifically alleged. They will appear in the course of this opinion.

The prayer for judgment is: "First, That the said tax deeds and the judgment purporting to confirm the same, and all taxes charged against said land for the years 1895 and 1899, inclusive, be canceled, annulled and declared and adjudged to be void, and that the defendant corporation, and all persons claiming under it, may be forever barred and precluded from any title or interest in or to said land. Second. That in case it appears that any of said taxes are valid, then that the court ascertain and determine the amount of the same, and the amount which the plaintiffs should pay to redeem said land from such taxes and tax sales, and that they be permitted to redeem from the same, and that they have such other and further relief as may be just, together with the costs and disbursements of this suit." The answer of the impleaded defendants set forth that their grantor, the Minnesota Title Insurance & Trust Company, acquired title by virtue of the tax deeds referred to in the complaint, which deeds, it is averred, were valid conveyances, and they plead the judgment above mentioned, obtained by their grantor, as a bar to the assertion of any claim by plaintiffs. The trial court sustained the defendants' plea of res adjudicata. The plaintiffs thereupon appealed from the judgment and demanded a trial de novo, under section 5630, Rev. Codes 1899.

The first question for determination is as to the validity of the prior judgment. If the judgment is valid, it precludes all further inquiry. The entire judgment roll in that former action was introduced in evidence. The facts disclosed by that record are as

follows: On September 3, 1901, a verified complaint, in the form prescribed by section 5907, Rev. Codes 1899, as amended by chapter 5, p. 9, Laws 1901, was filed in the office of the clerk of the district court of Ransom county, and a summons issued to the sheriff of that county. Said summons and complaint named the Minnesota Title Insurance & Trust Company, trustee for the Fidelity Investment Company, as plaintiff, and named as defendants 92 different persons or corporations "and all other persons unknown, claiming any estate in, or lien or incumbrance upon, the property described in the complaint, and their unknown heirs." Neither Mrs. Fenton nor David Allen Murray were named as defendants, but the name of Warham N. Murray appeared among the 92 defendants named. The complaint alleged that the plaintiff was the owner in fee simple of the property therein described. The lands described in the complaint consisted of 15 distinct tracts of land, situated in various parts of Ransom county. On September 12, 1901, the sheriff's return on the summons was filed, showing that after diligent search and inquiry he was unable to make service upon about 70 of the defendants named. On the same day an affidavit for publication of the summons was filed, which we shall assume was in proper form. It shows that the places of residence of about 60 of the nonresident defendants named were unknown, and sets forth the addresses of the remaining nonresident defendants. The summons was thereupon published, in accordance with the provisions of section 5254, Rev. Codes 1899. On January 18, 1902, after the time for answering had expired, an affidavit in the usual form was filed, showing that most of the defendants had made default. On January 25, 1902, the court heard and granted the plaintiffs' applications for judgment by default against the defendants who had not appeared, and made and filed formal findings of fact, conconclusions of law, and an order for judgment. On February 3, 1902, judgment was entered in accordance with the court's order, and is to the effect that the plaintiff therein is the owner in fee of each of the 15 tracts of land described, which included the quarter section involved in the present action; and further decrees that the claims or pretended claims of all of the defaulted defendants are null and void and without right, and that said defendants, and each of them, and all persons claiming under them or either of them, be forever barred from asserting any claim thereto. Subsequently two other judgments were entered in the same action, disposing of

Sup Ct—24.

the rights of those defendants who had appeared and answered. It appears from the findings and judgments in the former action, as well as from the other evidence offered in the present suit, that neither Lizzie Fenton, David Allen Murray, nor Warham N. Murray ever had or claimed to have any interest in the 14 other tracts involved in the action to quiet title. The same is true with respect to the adverse claims against each of the other tracts. The adverse claims against each tract were wholly distinct and independent from the claims against every other tract. Neither did the plaintiff in that action acquire its alleged title by a single instrument or transaction, but it based its claim upon separate tax sales and tax deeds, one or more for each tract; in other words, although the complaint on its face purported to set forth a single cause of action, the proceeding was in fact a combination of 15 wholly distinct causes of action, having no connection, the one with the other. It is argued by respondent that this omnibus or "log-rolling" proceeding is warranted by the statute (chapter 5, p. 9, Laws 1901) relating to actions to quiet title, and constitutes "due process of law." This act of 1901 is a remarkable piece of legislation in form, phraseology and substance. It purports to amend sections 5904-5913, Rev. Codes 1899, but comparison of the act with the sections of the Revised Codes which it purports to amend will disclose that it is a misnomer to term the act an amendatory one. It is virtually a total repeal of the former provisions, and the substitution of wholly different ones. Its evident purpose was to do away with all of the most important safeguards which the act of 1899 (chapter 157, p. 228, Laws 1899) had provided in order to minimize the likelihood of obtaining judgment in such an action without adequate notice to adverse claimants, whether known or unknown. The act of 1899, which was incorporated in the Revision of 1899 as sections 5907 and 5907a, provided a procedure whereby all unknown adverse claimants could be cited to appear by publication of the summons, and make known their claims, to the end that the nature and validity thereof might be determined. That act provided for the filing of a notice of lis pendens in the office of the register of deeds, and the publication of that notice with the summons. Rev. Codes 1899, section 5907. In this way notice was published to the world, disclosing the nature of the action and the property affected. The plaintiff was required to specify by name all known adverse claimants, whether their claims appeared of record or not.

There were also other safeguards for the protection of the rights of unknown claimants.   Section 5907, Rev. Codes 1899, is substantially, and to a great extent, a literal copy of section   5818, Gen. St. Minn. 1894.   The constitutionality of the Minnesota statute was sustained in Shepherd v. Ware, 46 Minn. 174, 48 N. W. 773, 24 Am. St. Rep. 212.   The act of 1901 (chapter 5, p. 9, Laws 1901) declares that it shall be sufficient to specifically name as parties defendant those who are in possession, or whose adverse claims appear of record.   All other adverse claimants, resident or nonresident, however well known they may be to the plaintiff, may be proceeded against as "unknown" without specifically   naming them.   In the recent case of Gilbreath v. Teufel (N. D.) 106 N. W. 49, we held that it was a gross abuse of judicial process to designate as "unknown" certain adverse claimants whose names   and whereabouts were known or ought to have been known to the plaintiff, and we held that a judgment so obtained ought to be vacated, although there had been a literal compliance with the language of the statute.   In that case the adverse claimants voluntarily appeared in the action after judgment, and asked leave to defend. We did not, therefore,   express any opinion as to the constitutionality of the law.   In this case it is a disputed question as to whether the plaintiff was chargeable with knowledge of the claims of Warham N. Murray's heirs, and it may be conceded, arguendo, that these heirs were in fact and law unknown adverse claimants. In this case, as in Gilbreath v. Teufel, the proceedings are in strict accord with the letter of the law.   The two cases well illustrate the gross abuse of process which the act has undertaken to devise as a substitute for "due process."   It will be readily seen that, if such a proceeding could be sustained as "due process," it would easily be possible for one having a pretended claim to land to obtain a judgment by default, barring the true owner without his knowledge, even though the latter were the plaintiff's next door neighbor, and the plaintiff knew that his neighbor was the owner of the land in fee simple under an unrecorded deed; and this could be done without violating a single provision of the statute.   As if to still further reduce the chances that the summons would convey any notice to adverse claimants, this act repealed the provision of the former act requiring a notice of lis pendens to be recorded in the registry of deeds, and a copy thereof to be published with the summons.   The result was that the plaintiff was required to name

in the summons only such adverse claimants as were in possession, or whose adverse claim appeared of record. All others, although actually known to the plaintiff, could be described as unknown claimants to the land involved, and this without describing the land in the summons. No service of summons upon such claimants was required, except by publication, and the publication disclosed neither the names of the claimants nor the land affected.

In a case of this kind there is no actual seizure of the property of which the adverse claimants may be deemed to have any sort of constructive notice. It is manifest, therefore, that the jurisdiction of the court to determine the rights of claimants to the property must be acquired by the service upon the adverse claimants of an appropriate notice. The form of the notice and the mode of service to be required are matters resting in the legislative discretion. This legislative discretion is not however, unlimited, but is controlled and restricted by that provision of the Fourteenth Amendment of the federal Constitution, which declares that no state shall deprive any person of life, liberty or property without due process of law. The state Constitution contains the same prohibition. Const., article 1, section 13. The fact, therefore, that the notice by which the court's jurisdiction to hear and determine must be acquired is in the form and has been served as prescribed by the statute is not a conclusive test of its sufficiency. Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520 ; Bardwell v. Collins, 44 Minn. 97, 46 N. W. 315, 9 L. R. A. 152, 20 Am. St. Rep. 547.

There can be no doubt as to the right of the legislature to provide for some other method of giving notice to interested parties of the pendency of an action than by personal service of the summons where the action involves property within the territorial jurisdiction of the court, and where personal service of the summons is for any reason impracticable. Notice by publication in such cases has always been held sufficient. There must, however, be notice of some kind, and it must be a notice of such a character that it will have a tendency, in a reasonable degree, to convey information to interested parties that the action affects their rights. A notice such as the published summons in this case, which neither names the adverse claimants to the land in controversy nor describes the land itself, is clearly neither appropriate nor reasonable. It conveys no information whatsoever that the action in-

volved the title to the land of these appellants, or that these appellants were in any way interested in the action. The publication of such a summons, containing no description of the property or persons affected, is, so far as the adverse claimants not named are concerned, no notice at all. As to such persons it possesses none of the essential attributes of a notice such as is required by "due process."

The legislature of 1905 has recognized the inadequacy of the proceedings prescribed by the act of 1901 to acquire jurisdiction in this form of action by an amendatory act, which restores substantially the proceedings required by the act of 1899. See chapter 4, p. 8, Laws 1905. We hold, therefore, that the judgment in the former action does not conclude these appellants, because the proceedings, although in statutory form, did not constitute "due process of law" against adverse claimants who were not named and who did not appear. As to such persons the judgment was wholly void, whether directly or collaterally attacked. Its invalidity affirmatively appears on the face of the judgment roll. Under such circumstances, the former recitals in the findings and judgment, to the effect that process had been duly served and jurisdiction duly obtained, are obviously of no avail. Adams v. Cowles, 95 Mo. 501, 8 S. W. 711, 6 Am. St. Rep. 74.

The evidence shows that the tax sales upon which the tax deeds were issued were void. The respondents virtually concede this by their silence on this point. Appellants, however, contend that all the taxes for which these void tax sales were made are wholly void, and should be canceled. This contention is not sustained by the evidence. The defects relied upon, even if the competency of the evidence to prove them were conceded, are mere irregularities of a trifling nature, which do not afford any ground for equitable relief from the tax. If any of the taxes were excessive (and the proof on that point is not clear), the excess is so slight that it is not worth mentioning in the computation of the amount required to redeem in equity. We think the case is one where the maxim "de minimis non curat lex" may be justly applied. This is not a case where the validity of the title depends upon the correctness of the amount charged.

Following the case of State Finance Co. v. Beck, 109 N. W. 357, and Powers v. Bank, 109 N. W. 361, recently decided, but not as yet reported, we hold that the plaintiffs, as a condition prece-

dent to equitable relief, should be required to pay to defendants, or into court for them, the total amount of taxes paid by the purchaser of the tax title, being the taxes for the years 1895, 1896, 1897 and 1898, all of which were paid by the Minnesota Title Insurance & Trust Company when the rights of the county were assigned to it on July 7, 1899. The amount so paid was $76.63, to which should be added the sum of $15.26, paid by said assignee on February 1, 1900, for the taxes of 1899. The defendants are entitled to interest on these sums from the respective dates of payment at the rate of 7 per centum per annum. A provisional decree or order may be entered, requiring such payment within 30 days after notice of the entry thereof, and upon compliance with its conditions a final judgment may be entered for the relief prayed for in the complaint, including taxable costs. If the plaintiffs fail to comply with the conditions imposed, judgment should be entered to the effect that the plaintiffs are entitled to no equitable relief, and that defendants recover the taxable costs and disbursements.

This case is distinguishable from Powers v. Bank, where we ordered a dismissal of the action, in this: That the complaint shows on its face and the evidence discloses that the plaintiffs were ready and willing and offered to redeem by paying what was justly due, but the defendants declined the offer, and their answer shows that a formal tender would have been unavailing.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion. The appellants will recover the taxable costs and disbursements of this appeal. All concur.