T. B. HUGHES, Plaintiff, Appellant, v. FARGO LOAN AGENCY, a Corporation; Citizens Bank of Lisbon, a Corporation; and The First National Bank of Fargo, a Corporation, Defendants, Respondents, and J. C. VINCENT,.Interpleaded Defendant and Respondent.

(178 N. W. 993.)

**Judgment — fatal defect in affidavit for publication rendered default judgment a nullity.**

　　1. In an action to declare a conveyance a trust deed and for an accounting, where the defendants were not residents of the state, and where an affidavit

---

NOTE.—May jurisdiction of suit to quiet title or remove cloud on title of land within the territorial jurisdiction rest upon constructive service of process against a nonresident, see note in 29 L.R.A. (N.S.) 625.

for publication of the summons was filed which may be construed to state that defendants were nonresidents, "as affiant is informed and believes," and which states the "present postoffice address" of the defendants "as affiant is informed and believes," and where the summons and complaint were personally served upon such defendants in the state of Washington, and thereafter judgment, upon default was rendered, it is *held* that such affidavit was fatally defective and the judgment rendered a nullity.

**Process — on service by publication court is confined to proceeding in rem.**
    2. In such action, the jurisdiction of the court extends only to an equitable proceeding in rem concerning the title of the land involved.

**Estoppel — quieting title — on issue of estoppel and laches, parties in action to determine adverse claims to realty held affected with notice of former void judgment.**
    3. In a subsequent action, to determine adverse claims to the real estate involved, in the alleged trust deed, where the defendants and intervener, through such void judgment, and the plaintiff, as the grantee of the vendee in such trust deed, claim title or liens upon the land, it is *held* that all parties are affected with notice of the void judgment and of the unsettled and undetermined nature and administration of the alleged trusteeship, upon which the equities of the parties, or their successors in interest, and the questions of laches and of estoppel, must depend.

Opinion filed July 3, 1920.   Rehearing denied September 10. 1920.

Action to determine adverse claims in Ransom county, *Cole, J.*

The plaintiff has appealed from a judgment in favor of the defendants and has demanded a trial *de novo*.

Reversed and remanded for a new trial with directions.

*Kvello & Adams,* for appellants.

Any deficiency in any of the jurisdictional proceedings is not a mere defect or technicality; it goes to the very foundation of the power of the court to act at all.   Roberts v. Enderlin Inv. Co. 21 N. D. 594; Johnson v. Englehard (N. D.) 176 N. W. 134; Dallas v. Luster, 27 N. D. 453.

And exactly the same principal is held in the following cases: Simensen v. Simensen, 13 N. D. 305; Jablonski v. Piesik, 30 N. D.

547; Atwood v. Tucker, 26 N. D. 622; Beach v. Beach, 6 Dak. 371, 43 N. W. 701.

Where the proceedings leading up to substituted service, such as the affidavit for publication of summons, are directly attacked—as was done here—no presumptions can be indulged to sustain them. Atwood v. Tucker, 26 N. D. 622; Coughran v. Markley (S. D.) 81 N. W. 2; Bathell v. Hoellworth (S. D.) 74 N. W. 231.

It is the general rule, not only in this state but elsewhere, that affidavits for publication of summons made on information and belief are insufficient. Dallas v. Luster, 27 N. D. 450; Simensen v. Simensen, 13 N. D. 305; Gibson v. Wagner (Colo.) 36 Pac. 93; Ronig v. Gillett (Okla.) 62 Pac. 805; 32 Cyc. 480 (39) (41).

Judgments entered without jurisdiction are wholly void and of no force and effect. Krumenacker v. Andis, 38 N. D. 508; Roberts v. Enderlin Inv. Co. 21 N. D. 594; Atwood v. Tucker, 26 N. D. 622; Jablonski v. Piesik, 30 N. D. 543; Simensen v. Simensen, 13 N. D. 310; Dallas v. Luster, 27 N. D. 450; Johnson v. Englehard (N. D.) 176 N. W. 134.

*W. J. Clapp,* for J. C. Vincent.

A court cannot vacate a judgment or grant a new trial, under § 7660 of the Compiled Laws, when more than six months has expired after the entry of the judgment. Higgins v. Rudd, 30 N. D. 551.

Appellant's counsel, Kvello & Adams, are estopped to question defendant's and respondent's title, because Kvello was a tenant of Rollo Curtis, maker of the Fargo Loan Agency mortgage, and under whom Vincent had deed which was made, delivered, and recorded while Kvello was in possession under such lease. Mpls. Iron Store Co. v. Branum, 36 N. D. 355; 24 Cyc. 934; 18 Am. & Eng. Enc. Law, 411; Balch v. Radford (Mich.) 148 N. W. 707; Beck v. Minnesota & W. Grain Co. (Iowa) 7 L.R.A.(N.S.) 930, 107 N. W. 1032; 16 R. C. L. 649.

Possession by landlord is not essential to the validity of a lease, and tenant in such case cannot question the title, and all persons claiming under him are also estopped. McManus v. Malloy (S. D.) 138 N. W. 963.

One partner being the tenant, the partnership is estopped. 2 R. C. L. 963; McFadden v. Jenkins (N. D.) 169 N. W. 151.

*Jno. D. Farrand,* for respondent Fargo Loan Agency.

The proper procedure to obtain relief from a default judgment is by motion to vacate the judgment, based on affidavit of merits and a proposed verified answer. Racine-Satley Mfg. Co. v. Pavlicek, 21 N. D. 222, 130 N. W. 228.

The order vacating was an abuse of discretion. Mougey v. Miller (N. D.) 169 N. W. 735; 15 R. C. L. § 178, p. 724, and cases cited; Colton v. Rupert, 27 N. W. 520.

Whereunder a judgment rendered on constructive service, certain lands were found to belong to the debtor, and were subjected to the payment of the judgment, and a sale was had and the lands sold to a bona fide purchaser, held that he was entitled to protection, although afterwards the judgment was vacated and set aside. Keene v. Sallenback, 18 N. W. 75; Hollister v. Mann, 58 N. W. 1126; Citizens State Bank v. Haymes, 76 N. W. 867; Comp. Laws 1913, § 7768.


Bronson, J. *Statement.*—This is an action to determine adverse claims to a quarter section of land in Ransom county. The trial court rendered judgment quieting title in the intervener subject to the liens of defendants' mortgages. The plaintiff has appealed and has demanded a trial *de novo* in this court.

For the consideration of the questions involved, it is necessary to set forth somewhat in detail the facts appearing in the record. All parties claim title from Gottlieb Grounitz. In 1891 the land was deeded to him for a stated consideration of $1,520. In 1899 he deeded this land to his daughter, Clara. This deed was not recorded. Later, in 1900, this deed was surrendered and canceled. On July 31, 1902, he gave a warranty deed, conveying in fee this land and also a house and lot in Lisbon, North Dakota, owned by him, to his son, Elmer. The father then had three living children, Elmer, Emil, and Clara, and a grand-daughter, the child of a deceased son.

In accordance with the testimony of Emil, who contested this deed to Elmer, his father, shortly after the deed to the daughter, Clara, was surrendered and canceled, told him that he would leave this land in the hands of either Elmer or himself, to be divided between the three children. Concerning the Lisbon property, he testified that his father was then living there with his sister, and he supposed that he intended that for her. He does not know what agreement the father had with Elmer,

nor what the father had in his mind when he deeded-the land to Elmer. Another witness, one Summerfield, testified that he was a next-door neighbor of the Grounitz family when they lived in Lisbon. That on one occasion the father told him that Clara wanted to get possession of all the property, but he did not think it was right. That the two boys had in a lot of money and hard work and they ought to have their share. (This apparently was during the time of the deed to the daughter.) He testified that later the father told him that he was going to give to Clara the house and lot, and to deed the farm to one of the boys and then they can settle it up between them. In another action between the children concerning the nature of this deed to Elmer (to be considered hereafter) the district court found that this land and the property in Lisbon were deeded to Elmer upon the agreement that Elmer would pay the net proceeds thereof to the father during his lifetime for his maintenance and support, and that, upon his death, the property was to be equally divided among the three children.

The father died about May 1, 1913. From July 31, 1902, to the time of the father's death, Elmer operated or rented this land (as the court found in such action) as the agent of the father.

In 1915, an action (mentioned above) was commenced by Emil against his brother Elmer, and his sister Clara, in the district court of Ransom county. The complaint is dated April 20, 1915. It alleges in substance that the deed from the father to Elmer was a deed in trust upon the understanding that Elmer would pay to the father the net proceeds thereof, for his maintenance and support during his lifetime, and, after his death, would divide the property equally among his three children; that, until the death of the father on or about May 1, 1913, the father had full control and supervision of the property and received the rents and profits pursuant to such understanding. That since May 1, 1913, Elmer has been in the possession of such property. That since May 1, 1913, the reasonable value of the use of the land is $400 annually, and, of the city property, $20 per month. That the plaintiff Emil has demanded his undivided one-third interest in the real estate and in the proceeds. The prayer of such complaint is that this deed be declared a trust deed; that an accounting be had and the amount found to be due be declared in trust, pursuant to the trust arrangement, for division between the parties equally.

On May 25, 1915, a *lis pendens* was recorded in the office of the register of deeds, to the effect that the object of such action was to declare the deed to Elmer a trust deed and for an accounting between the parties. On the same date an affidavit for the publication of the summons was made. It reads as follows:

State of North Dakota   } ss.
County of Ransom

T. A. Curtis, being first duly sworn, deposes and says: that he is a member of the firm of Curtis & Curtis, the attorneys for the plaintiff in the above-entitled action; that the defendants are nonresidents of the state of North Dakota and that the present postoffice address of Elmer Edward Grounitz is Colbert, Washington, and the present postoffice address of Clara Hall is Spokane, Washington, as affiant is informed and believes.

(Signed)

T. A. Curtis.

Subscribed and sworn to before me this 25th, day of May, 1915.

Walter G. Curtis.

Notary Public.

On June 1, 1915, the summons and complaint were served upon Elmer and Clara in the county of Spokane, Washington, by a deputy sheriff.

On June 14, 1915, Elmer wrote a letter to Emil, stating, in part, to the effect that, to his surprise, the summons and complaint were served upon him by the sheriff; that the trip of his father to Germany and his last sickness was expensive; that he had advanced other moneys to his father; that he was perfectly willing that Emil should have anything that was coming to him; that he would try and make out an itemized statement of all expense and mail it to him; that he could advertise the land or Emil could look up a cash buyer; that he advised him to cancel the summons. He requested Emil to write him at once. Emil testified that he received this letter. He did not testify that he answered this letter. No other correspondence appears in the record, between them. On August 18, 1915, this action, as upon a default of the defendants Elmer and Clara, was heard by the district court and findings made.

In these findings, the court determined that the deed to Elmer was a trust deed made upon the agreement hereinbefore stated; that the father died about May 1, 1913; that from July 31, 1902 to May 1, 1913, Elmer, as agent of the father, operated or rented the land, but did not pay over the net proceeds to the father; that, when the deed was made, the property in Lisbon was worth $1,500; that since July 31, 1902, Elmer sold such city property for $800; that Elmer and Clara were working together, and divided among themselves the proceeds of the sale of the city property and of the farm; that the reasonable value of the use of the land for each year since July 31, 1902, was $400; that the reasonable value of the land was $5,000; that, considering the reasonable value of the land and the city property plus the interest thereupon, the defendants have received $10,620, or $3,620 more than the reasonable value of the entire property; that the defendants have received more than their undivided two-thirds interest. The court, as conclusions of law, found that the defendants had no interest in the land. That Emil was the owner; and that the defendants should be restrained and enjoined from asserting any interest or lien upon such land. Pursuant to such findings, on August 19, 1915, judgment was entered.

On February 21, 1916, Emil conveyed the land by warranty deed to Rolla A. Curtis, a son of one of his attorneys. This deed was recorded March 24, 1916. On March 15, 1916, Rolla A. Curtis gave a mortgage for $3,000 to the defendant Fargo Loan Agency. This mortgage was recorded March 17, 1916. Likewise, on March 15, 1916, he gave another mortgage to such agency for $75. This mortgage was recorded March 24, 1916. Likewise, on March 15, 1916, he gave another mortgage to the defendant Citizens Bank for $500. This mortgage was recorded April 14, 1916. Likewise, on March 15, 1916, he gave another mortgage to such Citizens Bank for $150. This mortgage was recorded April 14, 1916. On July 24, 1916, Rolla A. Curtis conveyed the land by warranty deed to one Voisin. This deed was recorded July 28, 1916.

On July 29, 1916, notice of a motion to vacate the judgment above mentioned was made by Elmer and Clara, the defendants therein. It was served upon the attorneys for Emil. It was returnable August 8, 1916. It was heard by the court on August 12, 1916. The attorneys for Emil in such action appeared. Emil testified that he did not authorize such attorneys to appear for him in the vacation proceedings.

The motion, entered as a special appearance, attacked the jurisdiction of the court to render the judgment by reason of the affidavit for publication being void through noncompliance with § 7428, Comp. Laws 1913. On September 14, 1916, the court, pursuant to such motion, entered an order vacating such judgment.

Prior to such vacation, on August 5, 1916, said Voisin reconveyed by quitclaim deed the land to Rolla A. Curtis, who, on the same date, conveyed the same again to J. C. Vincent, the intervener herein. Both of such last-named deeds were recorded on August 9, 1916. On the same day, August 5, 1916, Elmer conveyed the land by warranty deed to the plaintiff, Hughes. This deed was recorded August 14, 1916.

Concerning the deed to Curtis, Emil testified that he was informed by his attorney that it was necessary to make a transfer in order to place a loan on the land. That he received $3,500 for this transfer; that he should judge the land was worth about $8,000; that he was led to believe that Curtis was going to place a $3,500 loan on the land; that this was understood before the deed was made to said Curtis; that this was the only way he paid his attorneys for fees earned in the lawsuit.

Evidence was given in behalf of the Fargo Loan Agency, that two mortgages were placed on this land, for which it had loaned and paid, in cash $3,000. The loan came in the form of an application through the defendant Citizens Bank. That the title was referred to their attorney for examination. The attorney for the agency testified that he had personal knowledge of this loan made to Rolla A. Curtis; that he examined the title and all the papers in connection with the Emil action, from the summons and complaint or copies of them to the judgment and, particularly, the findings and conclusions. That he procured the copies of the papers and judgment roll which were offered as evidence in this record. He concluded after such examination, that the title was good.

Vincent, the intervener, testified that in purchasing this land he examined it; that he traded for it two houses and lots in Lisbon and $1,600 in notes. That the total consideration was $4,700 for the land, in addition to the $3,500 mortgage then upon it. He had the abstract and someone examined it; that it was pronounced o. k.; that he assumed that the title down to the time the mortgage was placed on the land was

46 N. D.—3.

beyond question by reason of the loan being placed by the Fargo Loan Agency. He had no notice of the vacation of the judgment; no person was authorized to appear for him in the proceedings to so vacate; that he examined this land the latter part of July or the fore part of August. He relied on one Mr. Clow concerning the possession of the land. He never has been in possession of the land. That he understood that there was a mutual agreement that the land should be rented, and the rent held up during the pendency of this action.

One Clow testified that he represented Vincent in the sale of this land to Vincent; that he dealt with T. A. Curtis and Voisin; that an agreement was made to rent the land and hold the rent until the real owner of it was determined. There is no testimony in the record by the plaintiff; neither Elmer nor Clara testified. One of the attorneys for the plaintiff testified that he and another party rented the land from Elmer in 1915 and also in 1916. That they made a sort of conditional arrangement with Curtis,—a sort of a lease so as to play safe.

This action herein was instituted on March 10, 1917, against the Fargo Loan Agency, the Citizens Bank, and also the First National Bank of Fargo, as defendants. This National Bank had received a deed, as the record discloses, from Vincent to secure an indebtedness, or as collateral thereto, but the same was paid and a reconveyance made to Vincent. Answer was made by the defendants, asserting their lease and their title through Emil. In February, 1918, by leave of the court, Vincent filed his complaint in intervention, wherein he set up his title through Emil. The action was tried July 15, 1919. The Citizens Bank did not appear, and the trial court did not specifically find concerning its mortgages. Findings were made by the trial court on October 17, 1919. The trial court found that the deed to Elmer was a trust deed made solely to secure the maintenance of the father, and for the benefit of Emil, Elmer, and Clara; that on July 31, 1902, Elmer received, for the benefit of himself and his sister, the rents and profits from the land and city property conveyed. That he sold such city property and applied to the use of himself and his sister, Clara, such city property. That Emil never received from Elmer any of the proceeds from the sale of the lot, or the use of the land; that seventy-eight days after this process was served on Elmer and Clara, the action brought by Emil was heard by another district judge. The proceedings had in that court and

the transfers heretofore recited are found. That eleven months *after the* entry of the judgment of Emil, Elmer and Clara commenced proceedings to vacate the judgment; that the notice thereof was served only on the attorneys who appeared for the plaintiff in that action; that no notice was served on Emil or the defendants and intervener, or in this action, although their deed and mortgages were of record. That Rolla A. Curtis made a written lease with one of the attorneys for the plaintiff herein and another for the season of 1916. That in 1917 the plaintiff or his grantor made an agreement with Vincent for farming and renting the premises during the pendency of this action. The court found, as conclusions of law, that the plaintiff was estopped to dispute the title and liens of the intervener and defendants because of the great laches of himself and his vendor in permitting the defendants and intervener to invest their money and property, and for failure of plaintiff to offer or do equity. That the judgment of Emil against Elmer and Clara has never been vacated as to any of the defendants, including the intervener, in this action; that as to these defendants and intervener, the court acquired jurisdiction to hear and determine the action of Emil against Elmer and Clara. That the mortgages of the Fargo Loan Agency are valid and subsisting liens upon the land, and the intervener is the owner thereof, subject to such mortgages. Pursuant to such findings, judgment was entered on October 20, 1919.

*Opinion.*—The record has been carefully examined. The record facts have been quite fully set forth. This extensive recital of the record facts has been deemed necessary in order to demonstrate the error of two trial courts that have considered the title of this land. These record facts, when fully set forth, speak more effectively and forcibly than any argument.

There are three paramount legal questions presented upon this record, *viz.:* (1) The nature of the deed from the father to Elmer. (2) The jurisdiction of the court in the action of Emil against his brother Elmer, and his sister, Clara. (3) The laches and estoppel of the plaintiff or his grantor, Elmer.

*Nature of the Deed.*—This record discloses that the deed from the father to the son Elmer was in the nature of a trust deed, so far, at least, as this land involved is concerned. As alleged in Emil's action against Elmer and Clara, and not denied in the letter of Elmer to

Emil, and as found by the trial court in that action and in this action, the trust was the understanding that the father, during his lifetime, should receive the net proceeds from such land, and thereafter that the son Elmer should divide such land equally among his three children. This understanding, apparently a parol understanding, did not create an express trust. Comp. Laws 1913, § 5364; Cardiff v. Marquis, 17 N. D. 110, 117, 114 N. W. 1088. It did impose, however, by reason of the confidential relations existing and imposed, a constructive trust, upon these record facts, which was enforceable in equity. Cardiff v. Marquis, supra; Hanson v. Svarerud, 18 N. D. 550, 120 N. W. 550. In equity, upon these record facts, after the death of the father, the children each possessed a beneficial interest in this land, the legal title to which Elmer was holding as a trustee.

*Jurisdiction of the Court.*—The action instituted by Emil against his brother Elmer and his sister Clara was a suit to declare this deed a trust deed upon the understanding hereinbefore stated, to have an accounting between the parties and a distribution between them equally. The action was not one to determine adverse claims. Its scope, as is very evident, extended beyond a mere proceeding *in rem* to determine the title to this land. It involved, beyond the consideration of the respective titles of the parties in this land, the consideration in equity and *in personam* of the moneys or property received by Elmer in operating this land during the lifetime of his father, and, thereafter, as well as the moneys received either from the sale or the rent of the city property. It involved the consideration of the personal obligation of Elmer to the plaintiff Emil, as well as to his sister, and the personal judgment that might be rendered against him by reason of any failure on his part to fully account for his administration of the trust. The judgment as rendered by the trial court in that action discloses that, beyond determining the question of the title in the land involved as a proceeding *in rem,* it also determined the personal obligation of Elmer, as a trustee, and adjudicated the amount thereof. Through its final adjudication, the court in effect rendered judgment against Elmer for this personal obligation, offset it against his equitable interest in the land, and bodily transferred the real estate title to Emil in this land in exchange for the personal obligation owing from Elmer to Emil. Furthermore the judgment perpetually enjoined the defendants Elmer and

Clara from claiming any interest, lien, or encumbrance upon such land. Without further discussion, it is plainly evident that the pleading as filed and the judgment as made comprehended a procedure both *in rem* and *in personam*. See 8 Cyc. 1096; 23 Cyc. 683; 12 C. J. 1226; note in 29 L.R.A.(N.S.) 625. The court did not have jurisdiction over the persons of Elmer and Clara. They were nonresidents. The plaintiff sought to secure jurisdiction by publication of the summons. In lieu of publication, he personally served the summons and complaint upon Elmer and Clara. It is elemental that upon such procedure the trial court had no jurisdiction to render a personal judgment or to consider matters purely *in personam*. Its right to exercise jurisdiction was entirely based upon its jurisdiction over the land involved and its right to proceed thereby in an action *in rem* to determine the rights and titles of such land. See note in 29 L.R.A.(N.S.) 625; Fenton v. Minnesota Title Ins. & T. Co. 15 N. D. 365, 372, 125 Am. St. Rep. 599, 109 N. W. 363. The service of the summons and the complaint upon the defendant in a foreign state did not confer jurisdiction *in personam*. Furthermore, in such action upon the pleadings and the *lis pendens,* as filed, the affidavit for publication was fatally defective, and conferred no jurisdiction to hear and determine such action. The affidavit is susceptible of a construction that the clause "as affiant is informed and believes" refers to the statement therein that the defendants are nonresidents. The statute providing for service by publication is a permissive statute. It does not prescribe that the affidavit may state that the defendant is not a resident of such state upon information and belief. The statute further prescribes that the affidavit of publication shall state the place of defendants' residence, if known to the affiant, and, if not known, that fact must be stated. The statute does not prescribe that it is sufficient to state the present postoffice address of the defendants. The place of the residence of a party and his present postoffice address may be identical, and they may equally well refer to two different places. The present postoffice address of a United States Senator may be Washington, District of Columbia; his residence at the same time may be in Wahpeton, North Dakota. The present postoffice address of a person may be in San Diego, California, during three months in the winter, when at the same time his legal residence is at Grand Forks, North Dakota. The personal service of

the summons and complaint without the state does not cure the defects in the affidavit for publication. The statutory provision permitting personal service instead of the publication is an alternative in place of such publication. Comp. Laws 1913, § 7431. It is not an alternative for the requisite affidavit of publication. The rule of strict compliance concerning such affidavits for publication has been followed in this state for years. Roberts v. Enderlin Invest. Co. 21 N. D. 594, 132 N. W. 145; Atwood v. Tucker (Atwood v. Roan) 26 N. D. 622, 51 L.R.A.(N.S.) 597, 145 N. W. 587; Dallas v. Luster, 27 N. D. 450, 147 N. W. 95; Jablonski v. Piesik, 30 N. D. 543, 153 N. W. 274; Krumenacker v. Andis, 38 N. D. 500, 165 N. W. 524; Johnson v. Engelhard, 45 N. D. 11, 176 N. W. 134. The judgment as entered in such action was void, and the trial court properly vacated the same upon motion made therefor.

*Laches or Estoppel.*—When the defendant Fargo Loan Agency negotiated mortgages upon this property, it then had both constructive and actual notice of the state of the title. It is true that at that time the judgment of Emil had not been vacated, and no notice to vacate the same had yet been served. However, such Loan Agency fully investigated, as its attorney testified, the proceedings in the Emil judgment from the summons and complaint down to the judgment. It then had full actual notice that the legal title to such land was in Elmer, excepting as affected by this judgment of Emil. It is further to be noted as a circumstance that the first mortgage of $3,000 was made on March 15, 1917, nine days before the deed of Emil Grounitz to Rolla A. Curtis was recorded. It negotiated this loan with Rolla A. Curtis as mortgagor, the son of one of the attorneys for Emil. It is apparent that it had full notice concerning this title. The intervener Vincent was negotiating for the purchase of this land when there was then pending a motion to vacate the judgment in the Emil action. His representative negotiated with one of the attorneys for Emil for this land. His deed from Rolla Curtis is dated August 5, 1916. On the same date Elmer deeded the land to the plaintiff. At that time Emil was claiming the land and had leased it for the year 1916, and under the circumstances of this pending motion, the lease of Emil, and the proximity of the time when the deeds were made, in connection with the fact that Vincent never took possession and made or permitted to be made an arrange-

ment for the holding up of the rent during the pendency of this action, there are strong circumstances which show both his actual and constructive knowledge of the state of this title. The fact that the Fargo Loan Agency and this intervener were not served with notice of the vacation of the judgment is immaterial. As far as this record is concerned it was void on its face. It did not even require a motion to vacate such judgment except for record purposes. No laches is shown in this record which is not equally applicable to both the plaintiff and his predecessors and the defendants and their predecessors. It might as well be said that the failure of the intervener and the other defendants to bring an action concerning this title when Elmer had leased the land both for 1916 and 1917 and had conveyed the same was laches as to apply, likewise, upon such ground, laches to the plaintiff.

The question of whether the plaintiff or his predecessor has done equity or has offered to do equity is entirely a matter that rests upon the real nature and administration of the trusteeship, and the extent thereof.

Accordingly, the judgment in the Emil action being void, and the parties to this action not being chargeable with laches, it follows that the trusteeship of Elmer with respect to its full scope is still undetermined and remains unadjudicated. Upon the present record this court is unable, therefore, to render final judgment. It is proper, therefore, for a new trial to be granted so that the three children, Emil, Elmer, and Clara, may be joined as parties and a full hearing had for considering and determining the nature and the administration of the trusteeship and the rights of all the parties, by reason thereof, as successors in interest, or otherwise, to the land involved. The judgment is reversed and the case is remanded for a new trial, consonant with this opinion, with costs to the appellant.

ROBINSON and GRACE, JJ., concur.

BIRDZELL, J., did not participate.

CHRISTIANSON, Ch. J. (concurring specially). The property involved in this controversy originally belonged to one Gottlieb Grounitz. He was a widower with three children,—Emil Grounitz, Elmer Ed-

ward Grounitz, and Clara (Hall). In July, 1902, Gottlieb Grounitz deeded the land in controversy and a house and lot in the city of Lisbon to his son, Elmer Edward. Gottlieb Grounitz died on or about May 1, 1913, leaving said three children as his only heirs at law. In April, 1915, Emil Grounitz brought an action in the district court of Ransom county against his brother and sister as defendants. In such action he averred that such property had been deeded to said Elmer Edward Grounitz with the understanding that he "would pay the net proceeds derived from the operation of said lands and premises to the said Gottlieb Grounitz for his maintenance and support during his lifetime, and after his death to divide the said lands and premises equally among the three children of said Gottlieb Grounitz." The complaint averred that the reasonable value for the use of said farm property was $400 per year, and $20 per month for said city property; and that demand had been *made* upon said Elmer Edward Grounitz for a deed conveying a one-third interest in said real property, and the payment of one third of the proceeds received from said property, and that such demand had been refused. The prayer for judgment was "that said conveyance from the said Gottlieb Grounitz be declared a trust deed in conformance with the facts hereinbefore stated, and that an accounting be had between the defendants Elmer Edward Grounitz and Clara Hall and the plaintiff, and that the amount so found to be due on said accounting be declared to be held in trust for the uses and purposes aforesaid, and be distributed between this plaintiff and defendants share and share alike, and for the costs and disbursements of this action, and for such other and further relief as may to the court seem just and meet in the premises."

Summons and complaint in such action were served upon the defendants in the manner set forth in the opinion prepared by Mr. Justice Bronson. Judgment was entered by default:

(a) "That the defendants Elmer Edward Grounitz and Clara Hall have no interest in or title to the premises involved in said action.

(b) "That the plaintiff Emil Grounitz is the owner in fee simple" of said premises.

(c) "That the said defendants Elmer Edward Grounitz and Clara Hall and each of them are hereby enjoined from further asserting title to or interest in said premises."

The title asserted by the defendants and intervener.is predicated upon such judgment.

In the opinion prepared by Mr. Justice Bronson, it is held that that judgment is void; and that the plaintiff is not estopped from so asserting. I concur in these conclusions. I believe that the judgment was void even though the affidavit .for publication be considered sufficient. The court confessedly never had jurisdiction over the persons of the defendants in the action. At the most, it had jurisdiction of the *res.* The plaintiff was required to embody in his complaint a demand of the relief to which he supposed himself entitled. Comp. Laws 1913, § 7440. And where the defendant fails to answer, "the relief granted the plaintiff cannot exceed that which he shall have demanded in his complaint." Comp. Laws 1913, § 7680. Where the judgment awards. relief beyond the prayer of the complaint or the scope of its allegations, the excessive relief appearing from the face of the record is void for want of jurisdiction. Sache v. Wallace (Sache v. Gillette) 101 Minn. 169, 11 L.R.A.(N.S.) 803, 118 Am. St. Rep. 612, 112 N. W. 386, 11 Ann. Cas. 348. It seems to me that the judgment awarded Emil Grounitz against his brother and sister falls within this rule and the statutory time limit of one year in which to move to vacate a default judgment does not apply. Freeman v. Wood, 11 N. D. 1, 88 N. W. 721.